# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JACQUELINE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV671 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jacqueline Anderson, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI benefits on February 22, 2006 alleging a disability onset date of July 19, 2002. (Tr. 11, 177-82.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 113-18, 122-30, 131-39.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 140.) Present at the October 24, 2008 hearing were Plaintiff, her attorney, a Vocational Expert ("VE"), and a Medical Expert ("ME"). (*Id.* at 32-108.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-21.) On August 16, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

# II. FACTUAL BACKGROUND

Plaintiff was forty-one years old on the alleged disability onset date, had at least a high school education, was able to communicate in English, and had past relevant work as a health unit coordinator, stockroom clerk, and waitress. (*Id.* at 19.)

# III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v.*

---

[2] Transcript citations refer to the administrative record.

*Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

# IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(2)     Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled from July 19, 2002 through the date of the decision. (Tr. at 19-20.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date of July 19, 2002. (*Id.* at 13.) The ALJ next found in step two that Plaintiff had severe impairments: major depression; osteoarthritis; bilateral patellar instability; hepatitis C; bipolar disorder; hypertension; substance abuse disorder,

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.,* pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

status post thyroidectomy for goiter; scoliosis; and migraine. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four, the ALJ concluded that Plaintiff could no longer perform her past relevant work as a health unit coordinator, stockroom clerk, and waitress. (*Id.* at 19.)

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 15-19.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work except with the option to sit/stand every three to four hours. (*Id.* at 15.) The ALJ concluded further that Plaintiff could perform simple, routine and repetitive tasks in a slow paced environment with minimal social interaction. (*Id.*) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence, including Plaintiff's testimony, and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 19.)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff could not perform her past relevant work as a health unit coordinator, stockroom clerk, and waitress. (*Id.*)

6

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was forty-one years old on her alleged disability onset date which is defined as a "younger individual," with at least a high school education, and the ability to communicate in English. (Tr. 19.) The ALJ found further that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from the alleged onset date through the date of decision. (*Id.* at 19-20.)

## V. ANALYSIS

Plaintiff raises five issues. First, Plaintiff contends that the ALJ erred in concluding that she can do sedentary work. (Docket Entry 12 at 5.) Second, Plaintiff argues that the ALJ failed to properly evaluate the combined impact of her impairments. (*Id.* at 6.) Third, Plaintiff contends the ALJ erred in her credibility analysis. (*Id.* at 7.) Fourth, Plaintiff argues the ALJ failed to consider all of the evidence of record. (*Id.* at 9.) Last, Plaintiff contends

7

that the ALJ erred as a matter of law by contradicting herself regarding whether she had transferable work skills. (*Id.* at 10.) As explained below, these arguments lack merit.

## A. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Can Perform Sedentary Work.

Plaintiff contends that the ALJ erred by concluding that she could perform sedentary jobs identified by the VE because the VE also testified that such work would be precluded by the sit/stand option incorporated into Plaintiff's RFC. (*Id.* at 5-6.) Defendant concedes as much, yet contends the error is harmless. (Docket Entry 15 at 4-6.) As explained below, the undersigned agrees that the ALJ's error is ultimately harmless.

The ALJ's RFC, in pertinent part, limited Plaintiff to sedentary work and further required that Plaintiff have the option to "sit/stand every 3-4 hours." (Tr. 15.) The ALJ further concluded at step five that Plaintiff could perform two positions, cuff folder (DOT No. 685.687-014) and lamp shade assembler (DOT No. 739.684-094). (Tr. 20.) However, the VE testified that these jobs were both sedentary in nature (*id.* at 91), testimony which is consistent with the Dictionary of Occupational Title's descriptions of these positions ((lamp shade assembler) DOT No. 739.684-094 *available at* 1991 WL 680137; (cuff folder) DOT No. 685.687-014 *available* at 1991 WL 678284)). The VE also testified that sedentary jobs were not consistent with the proposed sit/stand option. (Tr. 92 ("I would not be able to identify any jobs at the sedentary level since that in nature is primarily in a seated position and in order to continue to perform the job in a standing position it would be awkward and not, not available.")) Thus, the record does not support the ALJ's findings that these two

8

positions are consistent with a sit/stand option.

This error is harmless, however, because the VE testified that there were other jobs that a claimant with Plaintiff's limitations could perform. Specifically, the VE identified jobs in the plastics industry that a person with a sit/stand option like Plaintiff's could perform. (Tr. 86-90, 92.) These jobs include: inspector and hand packer of plastic products (DOT No. 559.687-074 *available at* 1991 WL 683797), assembler of plastic hospital products (DOT No. 712.687-010 *available at* 1991 WL 679245), and an injection molding machine tender (DOT No. 556.685-038 *available at* 1991 WL 683482). These jobs are designated as light work, rather than sedentary work, by the DOT. (*Id.*) However, the VE testified that a hypothetical claimant with limitations like those of the Plaintiff could perform these positions, given the minimal amount of lifting these positions require. (Tr. 90.)[6]

Specifically, the ALJ asked the VE whether there were jobs a person could do if they were limited to lifting no more than twenty pounds at a time and only occasionally lifting or carrying up to ten pounds, with only occasional climbing, balancing, kneeling, crouching and crawling. (*Id.* at 86-89.) The ALJ further restricted the hypothetical claimant to performing simple, repetitive tasks in a work setting requiring minimal social interaction and which did not require a fast production pace or any interaction with the public. (*Id.*)

To this the ALJ replied:

> Because of the ability to lift up to 20 pounds maximum, we
> would place any jobs, that would qualify an individual for, for

---

[6] The VE also referenced (Tr. 90) an additional job at the light exertional level, poly packer heat sealer, which does not appear to be in the plastics industry. (DOT No 920.686-038 *available at* 1991 WL 687959). As explained below, this is ultimately of no consequence.

9

light physical demand and we would look at jobs where the objects handled would not exceed the ten pounds lifting more than occasionally. And I would look at jobs, Your Honor, such as an Injection Molding Machine Tender. Your Honor, it's described under DOT code 556.685-038. It's classified as light work in terms of physical demand, had an SVP of 2 being unskilled. Working with plastics in this job, the objects generally are not more than ounces or lifting a tray that would not lift, weigh more than five pounds and that would not be on more than an occasional basis. We estimate that jobs of that type within our economy in North Carolina, there are approximately 2,000 specifically at that physical demand and skill level that would qualify; nationally, a minimum of 50,000. We also have jobs in plastics similar to that described under Inspector and Hand Packager of Plastic Products described under DOT code 559.687-074 or Assembler of Plastic Hospital Products would be a similar job, DOT code 712.687-010. These light, unskilled SVP 2 jobs, Your Honor, exist in our economy in North Carolina, approximately 2,000 with various titles; nationally, a minimum of 35,000 specifically. I would also look at a job such as a Poly Packer Heat Sealer, DOT code 920.686-038. It is light work in terms of physical demand, has an SVP of 2. This is in the protective devices medical and surgical apparatus and supplies. We estimate in the state of North Carolina we have approximately 1,500 jobs of that type; nationally, a minimum of 40,000. Again, those are, there are three types of jobs your honor, that would be appropriate.

(Tr. 90.)

The ALJ then asked the VE if there were jobs that the hypothetical claimant mentioned in the previous paragraph could perform if limited to lifting no more than ten pounds and occasionally lifting or carrying small articles, like small tools, files, or ledgers. (*Id.*) The VE responded that such a claimant would be able to perform "the plastics jobs" mentioned above. (*Id.*) The ALJ next asked the VE to assume further that the hypothetical claimant was limited to performing sedentary work and the ALJ responded that such a

10

claimant could perform work as a cuff folder and lamp shade assembler. (*Id.* at 91.)

Finally, the ALJ added a sit/stand option to the previous hypothetical. (*Id.* at 92.)
The VE responded:

> That would significantly erode these numbers, Your Honor.
> However, the jobs at the light level of the physical demand I
> have observed and do know that the work stations are at, in
> some of the jobs approximately 25% of those numbers would
> continue to be available to a person that required an
> opportunity to sit or stand at their discretion on a minimum
> alternating of at, of 30 minutes. If it's any more frequently
> than that it would make it very difficult. I would not be able to
> identify any jobs at the sedentary level since that in nature is
> primarily in a seated position and in order to continue to
> perform the job in a standing position it would be awkward and
> not, not available.

(*Id.*) Thus, though Plaintiff's limitations would reduce the occupational base of the light,

unskilled plastics jobs mentioned above (inspector and hand packer of plastic products,

assembler of plastic hospital products, and an injection molding machine tender) by about

75%, the VE testified that in some of these jobs 25% of the remaining positions would

accommodate the hypothetical limitations, including the sit/stand option.

The Fourth Circuit has held that as few as 110 positions regionally constitutes a

significant number of jobs. *See, e.g., Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979);

*Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, *5 (4th Cir. Jan. 11, 1999); *Hyatt v. Apfel*, No.

97-2225, 1998 WL 480722, *3 (4th Cir. Aug. 6, 1998). Moreover, "[n]o principle of

administrative law or common sense requires . . . remand [of] a case in quest of a perfect

opinion unless there is reason to believe that the remand might lead to a different result."

11

*Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *Camp v. Massanari*, No. 01–1924, 2001 WL 1658913, *1 (4th Cir. Dec. 27, 2001) (unpublished); *Spencer v. Chater*, No. 95–2171, 1996 WL 36907, *1 (4th Cir. Jan. 31, 1996) (unpublished).

As explained, the VE testified that there were about 2,000 injection molding machine tender jobs in North Carolina and a minimum of 50,000 nationally. (Tr. 90.) A 75% reduction leaves approximately 500 of these jobs in North Carolina and 12,500 nationally. As for the jobs of inspector and hand packager of plastic products as well as assembler of plastic hospital products, the ALJ indicated there were about 2,000 of these jobs in North Carolina and a minimum of 35,000 nationally. (*Id.*) A 75% reduction leaves approximately 500 of these jobs in North Carolina and 8,750 nationally. Finally, the VE also testified that there were approximately 1,500 poly packer heat sealer jobs in North Carolina and a minimum of 40,000 nationally. (*Id.* at 90.) This position does not appear to be one of the "plastics jobs" the VE mentioned, but even if it were, a 75% reduction would still leave approximately 375 positions in North Carolina and 30,000 positions nationally.

Thus, while substantial evidence does not support the ALJ's *narrower* conclusion that Plaintiff could work as a cuff folder and lamp shade assembler, there is substantial evidence in the record supporting the ALJ's *broader* conclusion that there were other "jobs existing in significant numbers in the national economy" that Plaintiff can perform. (Tr. 19.) Because a 75% reduction of the "plastics jobs" referenced by the VE would still leave a significant number of jobs that Plaintiff can perform, a remand would be fruitless here.

12

## B. The ALJ Accounted for the Combination of Plaintiff's Impairments.

Plaintiff next contends that the ALJ failed to take into consideration the combination of her impairments, including her pain, her physical impairments, and her mental condition. (Docket Entry 12 at 6-7.)[7] This argument is without merit.

Plaintiff is correct that the Social Security Act requires the ALJ to consider the combined impact of all of her impairments. *See* 20 C.F.R. §§ 404.1523, 416.923. However, as Defendant correctly points out (Docket Entry 15 at 6), the ALJ explained in her decision that she "evaluated all of [Plaintiff's] symptoms, including pain," according to the relevant law. (Tr. 18.) Consistent with this, the ALJ specifically found at step three that Plaintiff did not have an impairment or combination of impairments that equaled a listed impairment. (*Id.* at 13.) The ALJ next set Plaintiff's RFC and in so doing accounted for Plaintiff's mental and physical impairments in light of the record. (*Id.* at 15-19.) As noted, the ALJ determined that Plaintiff retained the RFC to perform sedentary work except with the option to sit/stand every three to four hours. (*Id.*) The ALJ concluded further that Plaintiff could perform simple, routine and repetitive tasks in a slow paced environment with minimal social interaction. (*Id.*)

---

[7] In support of this argument, Plaintiff points to evidence in the record where (1) she reports her pain as "overwhelming" (Docket Entry 12 at 6 citing Tr. 67), (2) she is reported as walking with an antalgic gait in the left knee with constant pain (*id.* at 482), (3) she is reported to use a cane, and her straight leg raise was positive on several occasions (*id.* at 68, 482, 488, 493), (4) the ME indicates Plaintiff had a patellar dislocation (*id.* at 67), (5) medication made Plaintiff "groggy" and "distant" and she also felt fatigue from hepatitis C and from her thyroid removal (*id.* at 67-70), (6) Plaintiff reported that she is not competent to work because she cannot concentrate (*id.* at 68), (7) the record notes that "significant psychosocial factors [were] inteferring with physical functioning" and Plaintiff was taking Cymbalta for pain and depression (*id.* at 477), and (8) as early as July 2005, the record reflects a "significant relationship between [Plaintiff's] pain and stress" (*id.* at 465).

13

In support of this finding, the ALJ discussed Dr. Mark Solomon's consultative report, which in pertinent part concluded:

> During the clinical interview, the patient appeared cognitively intact with intact expressive and receptive language abilities. The patient also appeared emotionally intact with one brief tearful episode observed. On the administrative tasks, the patient demonstrated a normal performance. The results from this evaluation indicated this patient would be able to perform simple or repetitive job skills in a work environment from cognitive and psychiatric perspectives. She would also be able to maintain an adequate level of concentration and persistence. This patient would interact appropriately with peers, supervisors, and coworkers in a job setting. The patient would be able to manage her own benefits, should she be awarded them.

(Tr. 17, 293.)

The ALJ also considered Dr. Nathan Strahl's medical opinion. Dr. Strahl, the ME who testified at Plaintiff's hearing before the ALJ, reviewed the evidence of record and testified that in spite of her mental impairments, Plaintiff could perform simple, routine, repetitive tasks. (*Id.* at 17, 63, 73.) The ALJ further gave "considerable weight" to two state agency psychological consultants that reviewed evidence of Plaintiff's depression and concluded that she had mild to moderate mental functional limitations. (*Id.* at 18, 19, 285, 288-89, 294-95, 307.) In evaluating her functioning, the consultants considered and addressed the relationship between Plaintiff's depression and physical impairments. (*Id.* at 278, 309.) Both consultants concluded Plaintiff could perform simple, routine, and repetitive tasks. (*Id.* at 19, 290, 296, 309.)

In evaluating Plaintiff's physical limitations, the ALJ cited Dr. Nicholas Kredich's

14

examination, which noted that despite her pain, Plaintiff had full range of joint motion, full strength and normal deep tendon reflexes in her extremities, no tenderness or palpitation in her spine or effusion in her knees, normal gait, and negative straight leg raising. (*Id.* at 15, 542-44.) The ALJ also cited Dr. Margaret Gradison's November 2004 examination that showed Plaintiff moved about the room easily and that her gait and balance were normal. (*Id.* at 16, 531-32.) Likewise, the ALJ referenced Dr. Karyn Rahn's January 2006 examination, which showed Plaintiff had intact strength and sensation, normal gait, and a negative straight leg raise testing. (*Id.* at 16, 509-11.) The ALJ further referenced Dr. Jeffrey Murray's August 2008 examination, indicating Plaintiff's knees had range of motion and that they were stable on stress testing. (*Id.* at 17, 577.) In short, Plaintiff's argument that the ALJ failed to consider the combination of her impairments is not compelling. And, beyond this, Plaintiff has failed to establish how further scrutiny of the combination of her impairments results in any greater functional limitations than those already set forth in her RFC.

### C. The ALJ Properly Concluded That Plaintiff's Pain Was Not Disabling.

Plaintiff next contends that the ALJ "erred by rejecting [Plaintiff's] pain testimony for an irrational reason." (Docket Entry 12 at 7.) This argument lacks merit.

The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence,

15

and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, *3 (W.D.N.C. Nov. 18, 2010) (unpublished) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)). "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*. Similarly, in determining the credibility of a claimant, SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p. Importantly, an ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8,

16

1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, after considering the record, including those medical opinions mentioned above, the ALJ stated that "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 19.) The ALJ thus performed the first step of the *Craig* analysis. The ALJ went on to perform the second step of the *Craig* analysis, concluding further that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*)

In support of this conclusion the ALJ found that:

> the claimant's allegations of functional limitations are not supported by the longitudinal record. In Exhibit 17F, the claimant told Dr. Murray that knee pain was related to activity. She denied any numbness, tingling, or sensory motor changes distally. She also denied any complaints of locking or instability in the knees. In fact, the physical examination revealed the claimant had full range of motion of both knees. The claimant's testimony at the hearing directly contradicted the report[ ] given to Dr. Murray in Exhibit 17F. The claimant also did not tell the truth about her recent relapse of cocaine use and admitted not telling the truth at the examination. The claimant's allegation that her impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record and is not considered to be fully credible.

(*Id.* at 18, 577-79.) The ALJ's decision also notes that Plaintiff attended nursing school in

17

2004 and 2006 and notes further Plaintiff's acknowledgement to a physician's assistant in January 2006 that she "can live with" a chronic pain level of "6." (*Id.* at 16-17, 507-09, 531.) All this is substantial evidence in support of the ALJ's credibility analysis.

Plaintiff's arguments to the contrary are not convincing. Plaintiff contends that the ALJ relied solely on a 2008 report from Dr. Murray in making a credibility determination. (Docket Entry 12 at 7 citing Tr. 577.) Plaintiff concedes that this report indicates that her knees had full motion, that she denied any numbness, tingling, and sensory motor changes distally, and that she denied any locking or instability. (*Id.*) Nevertheless, Plaintiff continues, the ALJ "did not take into account . . . that this was an isolated snapshot and was not typical of [Plaintiff's] condition." (Docket Entry 12 at 7.)

For example, Plaintiff points to a 2006 medical record from Triangle Orthopedic Associates ("TOA") recording Plaintiff's reports of "buckling, popping, and locking of the knees, along with constant pain in her knee and low back pain." (*Id.* citing Tr. 482.)[8] Plaintiff further points to similar documentation from TOA indicating that in March and April 2004 she demonstrated (1) an antalgic gait on her left side (*id.* citing 314), (2) a left knee range of motion "to 120 *with pain*" (*id.*), (3) aggravating pain from standing and walking (*id.* at 317), (4) no extension in either knee (*id.*), (5) poor "VMO contraction" for both knees (*id.*), and (6) "[s]low progress toward functional goals" due to pain (*id.*).

---

[8] Plaintiff asks the Court to take judicial notice of the fact that "popping and locking" is common with dislocated knees. (Docket Entry 12 at 7). Assuming the Court could take judicial notice, and was inclined to take judicial notice, of the fact that "popping and locking" was common with dislocated knees, the undersigned would still conclude that the ALJ's credibility analysis was supported by substantial evidence and would still conclude that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled under the Act. As explained above, the record as a whole supports the ALJ's analysis.

18

Plaintiff also points to TOA documentation indicating that by April 2004[9] she had crepitus in her knee (*id.* at 321), that her physical therapist did not think Plaintiff could improve from an exercise program (*id.* at 324), that her "problems are worse" (*id.* at 325), and that the medical impression was "was recurring dislocation of the left leg" (Docket Entry 12 at 8 citing Tr. 325). Last, Plaintiff points to an April 2004 TOA report in which she recounts her most recent dislocation being "a few weeks ago." (*Id.* at 326.) The report goes on to say that Plaintiff "continues to feel subjective sense of patella subluxation and even frank dislocation" and that she had bilateral patellar instability. (*Id.*)

Nevertheless, as Defendant correctly points out (Docket Entry 15 at 9), the ALJ considered Plaintiff's allegations of pain but found that the associated functional limitations were not as severe as alleged. (Tr. 18.) The ALJ did not rely solely on Dr. Murray's report, but also cited the above-mentioned sources, including the reports and records of Drs. Kredich, Gradison, and Rahn, as well as the testimony of Dr. Strahl, which support the ALJ's conclusions. The ALJ also acted reasonably in partially discounting Plaintiff's credibility given that she admitted at the hearing that she had not been truthful about her drug relapse. (Tr. 18, 64-65, 99-102, 107.) *See Hart v. Astrue*, 349 Fed. App'x 175, 177 (9th Cir. 2009) ("The record is replete with instances of Hart making misrepresentations, doctor-shopping and drug seeking. The ALJ thus provided clear and convincing reasons for rejecting Hart's testimony.") In sum, the ALJ's credibility determination is supported by

---

[9] Plaintiff asserts that this TOA documentation speaks to her condition in 2006, but the documents themselves reference care Plaintiff received in 2004. (Docket Entry 12 at 8 citing Tr. 321-26.) Regardless, even assuming Plaintiff was correct in this regard, the undersigned would reach the same conclusions included herein.

substantial evidence.

## D. The ALJ Considered the Entire Record.

Plaintiff next argues that the ALJ selectively relied upon facts favorable to a non-disability finding. (Docket Entry 12 at 9.) Specifically, Plaintiff argues:

> The ALJ was selective in the evidence she chose for assessment. She did not cite one instance [of] positive leg raise and antalgic gait, but she did mention [Plaintiff's] negative straight leg raise and a normal gait in October 2003. (AR 15.) Also, as we have just seen, the ALJ focused on an isolated report by Dr. Murray in order to find that [Plaintiff] was less than credible at *Craig* step two. The ALJ also focused on Dr. Murray's report that [Plaintiff] had full range of motion while neglecting to mention that [Plaintiff] had crepitance (the sound of bone rubbing on bone) throughout the arch range of motion, and that throughout the right knee arch range of motion, there was "significant lateral subluxation of her patella." (AR 493-94). The ALJ also ignored that her left knee, . . . had ROM only to 120 degree *with pain*. (AR 314.)

> The selective use of evidence simply cannot be condoned. Here, the ALJ elevated an isolated piece of evidence—Dr. Murray's report—in order to reach the desired result. This should not be allowed.

(*Id.*)

This argument is not convincing. As an initial matter, the ALJ indicated that he had given "careful consideration [to] the entire record," had "considered all [Plaintiff's] symptoms," and had given "careful consideration of the evidence." (*Id.* at 15, 19). The Court is entitled to rely on these representations absent a compelling reason to the contrary. *See Grubby*, 2010 WL 5553677, *6 *citing Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991) (concluding that because the ALJ stated that he considered the entire record in making

his decision, the court could reject the claim that the claimant's wife's testimony was not considered).

Second, it is well established that an ALJ need not provide a written evaluation for each document in the record. *See Brittain v. Sullivan*, No. 91-1132, 1992 WL 44817, *6 (4th Cir. March 11, 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion . . . . [However] an ALJ need not provide a complete written evaluation of every piece of testimony and evidence . . . ."); *see also N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31 2009) (unpublished) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision.").

Third, as Defendant correctly points out (Docket Entry 15 at 12) the ALJ addressed and relied on numerous medical sources, not just the medical opinion of Dr. Murray. (*See, e.g.*, Tr. 15-17, 509-11, 531-32, 542-44.) The ALJ determined that this evidence demonstrated a number of severe impairments and pain and consequently incorporated the relevant limitations into Plaintiff's RFC. (*Id.* at 13-19.) Plaintiff has failed to demonstrate that she has limitations beyond those set forth in the ALJ's RFC. Simply put, substantial

evidence supports the ALJ's conclusion that Plaintiff is not disabled under the Act.

### E. The ALJ Contradicted Herself in Addressing the Transferability of Plaintiff's Skills, However, Any Error Is Harmless.

Last, Plaintiff contends that the ALJ erred because although she found that Plaintiff had "no acquired work skills from past relevant work," (AR 19), she also found that "the claimant has acquired work skills from past relevant work that are transferable to other occupations . . . . ." (Document 12 at 10 quoting Tr. 19). Plaintiff concludes that "[t]his error compounds the ALJ's prior mistakes and makes clear that the Decision as a whole is too unreliable to allow it to stand." (*Id.*)

Plaintiff is correct that the ALJ contradicted herself as described above. Yet this error is ultimately harmless. The ALJ evaluated the VE's testimony in relation to the framework set forth in the Medical-Vocational Rules, which specify that a finding of non-disability is appropriate *regardless* of whether Plaintiff's prior skills are transferable. (Tr. 20.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.21, 201.22. Thus, the transferability or non-transferability of skills is ultimately irrelevant here, especially given that the jobs referenced by the VE that Plaintiff could perform are unskilled in nature. (Tr. 85-90.) As explained earlier, remand is not favored where, as here, it is a fruitless exercise. *Fisher*, 869 F.2d at 1057; *Camp*, 2001 WL 1658913 at *1; *Spencer v. Chater*, 1996 WL 36907 at *1.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court

**RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11)

be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be

**GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 12, 2013