IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACQUELINE ANDERSON,            )
                                )
        Plaintiff,               )
                                )
    v.                           )       1:10CV671
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
        Defendant.               )

**ORDER**

This matter is before the court for review of the Memorandum Opinion and Recommendation ("Recommendation") filed on July 12, 2013, by the Magistrate Judge in accordance with 28 U.S.C. § 636(b). (Doc. 16.) The Recommendation was served on the parties to this action on July 12, 2013. Counsel for Plaintiff filed objections (Doc. 18) and counsel for Commissioner responded to Plaintiff's objections. (Doc. 20.)

This court is required to "make a de novo determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Having conducted such a review, this court will adopt all of the Magistrate Judge's Recommendation except for Part V.A., which deals with the conclusion of the Administrative Law Judge

("ALJ") that Plaintiff is not disabled because she has several "sedentary" jobs available to her notwithstanding her physical limitations. As to that part, the court will order the case remanded to the Commissioner with instructions to clarify her findings of fact and conclusions of law pursuant to the discussion below.

I. **STANDARD OF REVIEW OF THE ALJ'S DECISION**

In cases such as this one, where the matter was previously adjudicated by an ALJ, review of the ALJ's ruling is limited to the following two issues: (1) whether substantial evidence supports the ALJ's decision, and (2) whether the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g) (2010); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The question is not whether Plaintiff is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). If a reasonable mind might accept as adequate the evidence in support of the ALJ's decision, the court should not reweigh the evidence or substitute its judgment for that of the ALJ. Hays, 907 F.2d at 1456.

Review of the ALJ's ruling is limited further by the so-called "Chenery Doctrine," which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. See Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947). Under the doctrine, a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency." Id. at 196. "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." Id.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Social Security Regulations define "disability" for the purpose of obtaining benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ follows a five-step analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. See Albright v. Comm'r of Soc. Sec. Admin.,

174 F.3d 473, 475 n.2 (4th Cir. 1999). The final question in the analysis is whether the claimant is able to perform any other work considering both her residual functional capacity (RFC)[1] and her vocational abilities. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the analysis, at which point she asked the testifying Vocational Expert ("VE") to comment on the type and number of jobs available to hypothetical persons sharing certain of Plaintiff's characteristics, e.g., age, education, past relevant work experience, and physical limitations. (See Tr. at 85-91.) With each new hypothetical, the ALJ added various limitations specific to Plaintiff and had the VE modify her conclusions accordingly. (Id.)

At one point, the ALJ asked the VE about jobs available for a person who "could lift no more than 20 pounds at a time and occasionally lift or carry objects weighing up to ten pounds." (Tr. at 88-89.) The VE testified that a claimant with that

---

[1] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (e.g., pain). See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(l); see also Mines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "non-exertional limitations (i.e.[,] mental, sensory or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981).

limitation could perform several plastics-related jobs in the "light physical demand" category, such as "Injection Molding Machine Tender" (50,000 positions nationally, 2,000 positions in North Carolina), "Inspector and Hand Packager of Plastic Products" (35,000 positions nationally, 2,000 positions in North Carolina), and Poly Packer Heat Sealer (40,000 positions nationally, 1,500 positions in North Carolina). (Tr. at 89-90.)

The ALJ then further refined the hypothetical by limiting the hypothetical claimant's lifting capabilities to "no more than ten pounds at a time." (Tr. at 90.) The VE responded that "the plastics jobs" would still be available to a claimant with that limitation, as well as certain jobs in the "sedentary" work category, like "Cuff Folder" (5,000 positions nationally, 200 positions in North Carolina) and "Lamp Shade Assembler" (4,000 positions nationally, 500 positions in North Carolina). (Tr. at 90-91.)

Finally, the ALJ added another of Plaintiff's physical characteristics to the hypothetical: the need to alternate between sitting and standing several times a day. (Tr. at 92.) The VE responded:

> That would significantly erode these numbers, Your Honor. However, <u>the jobs at the light level of physical demand I have observed and do know that the work stations are at, in some of the jobs approximately 25% of those numbers would</u>

> continue to be available to a person that required an opportunity to sit or stand at their discretion on a minimum alternative of . . . 30 minutes. If it's any more frequently than that then it would make it very difficult. I would not be able to identify any jobs at the sedentary level since that in nature is primarily in a seated position and in order to continue to perform the job in a standing position it would be awkward and not . . . available.

(Tr. at 92.) (Emphasis added.) The first emphasized part of the VE's response ("the jobs at the light level . . . I have observed . . .") fails to identify which jobs the VE has observed and is referencing with her response of "25% of those numbers would continue to be available . . ." (Id.) The VE's description of the possible jobs described in the light level category appears to be representative rather than all-inclusive. (Tr. at 89-90)("And I would look at jobs, Your Honor, such as Injection Molding Machine Tender . . . We also have jobs in plastics similar to that described under Inspector and Hand Packager.").

Moreover, the VE's testimony indicates that the hypothetical plaintiff with a sit-stand requirement is precluded from performing sedentary jobs. Nevertheless, the ALJ's final decision listed two sedentary jobs – "cuff folder" and "lamp shade assembler" – as ones Plaintiff could perform. (Tr. at 20). The ALJ also found that these two jobs existed in sufficient

numbers within North Carolina and the United States. Id.
Plaintiff objected to the ALJ's conclusions as erroneous based
on the VE's testimony (Pl.'s Br. in Supp. of Mot. for J. on the
Pleadings (Doc. 12) at 5-6), but the Magistrate Judge
recommended that any "error" be treated as "harmless . . .
because the VE testified that there were other jobs [i.e., the
"plastics jobs" in the "light work category"] that a claimant
with Plaintiff's limitations could perform." (Recommendation
(Doc. 16) at 9).

Plaintiff then objected to the Recommendation, asserting
that the Magistrate Judge's analysis "would violate the Chenery
doctrine by supplying a rationale that the ALJ rejected." (Pl.'s
Objections to Mem. & Recommendation (Doc. 18) at 2.) This court
requested further briefing on the Chenery issue (Doc. 21), and
both parties have submitted supplemental briefs (Docs. 22 & 23).
Not surprisingly, Plaintiff contends that the Chenery Doctrine
bars this court from adopting Part V.A. of the Magistrate
Judge's Recommendation, while the Commissioner draws the
opposite conclusion.

### III.  ANALYSIS

While acknowledging that the jurisprudence on this issue is
far from clear, this court will err on the side of caution and

find that adopting Part V.A. of the Magistrate Judge's Recommendation would violate the Chenery Doctrine, because it would require excessive intrusion into the ALJ's domain.

For her part, the Commissioner points out that the Fourth Circuit has recognized an exception to the Chenery Doctrine "where the error does not impact the substance of the administrative decision and remand would be a useless formality." (Comm'r Supplemental Br. (Doc. 23) at 2-3.) The Commissioner cites Ngarurih v. Ashcroft, 371 F.3d 182 (2004), in support of this contention. The Ngarurih plaintiff, who was a Kenyan national, sought a reversal of the Immigration Law Judge's ("ILJ") determination that he was not entitled to "humanitarian asylum." Id. at 189. The ILJ found that Ngarurih had voluntarily returned to Kenya just a few years earlier – which negated the particular legal theory he was using to make his case for asylum. Id. at 189-90. The Fourth Circuit affirmed the ILJ's determination that the plaintiff had willingly returned to Kenya, id. at 190, but held that, even if the finding was erroneous, the error was "harmless." Id. Elaborating on the interplay between Chenery and the harmless-error doctrine, the court noted that "reversal is not required when the alleged error 'clearly had no bearing on the procedure used or the

substance of the decision reached.'" Id. at 190 n8 (citing Massachusetts Trs. of E. Gas & Fuel Assocs. v. United States, 377 U.S. 235, 248 (1964)).

While this court acknowledges that Chenery and the harmless-error doctrine can coexist in some circumstances, it finds the application of the harmless-error doctrine in Ngarurih inapposite to the case at bar. In affirming the ILJ, the Ngarurih court confirmed that the exception under which Ngarurih was seeking humanitarian asylum is "construed . . . narrowly," and "reserved for the most atrocious abuse." Ngarurih, 371 F.3d at 190. The court then looked at the uncontested facts and decided, apparently as a matter of law, that the mistreatment Ngarurih suffered was insufficient to meet that threshold under any legal theory, whether or not he could prove that he returned to Kenya unwillingly. See id. at 190-91. This run-of-the-mill harmless-error analysis required the Fourth Circuit to do nothing other than make a simple conclusion of law; the Commissioner, on the other hand, is asking this court not only to confirm the ALJ's legal conclusion that Plaintiff is not disabled, but also to parse the administrative transcript and make several dispositive findings of fact that the ALJ did not make. (See, e.g., Comm'r Supplemental Br. (Doc. 23) at 4-5

(asking the court to infer from the text of the ALJ's decision that non-cited portions of the VE's testimony would suffice to support the ALJ's finding of non-disability).) This court believes that the second part of that request would cross the line between permissible application of the harmless-error doctrine and impermissible infringement on Chenery principles, and so declines to do what the Commissioner asks.[2]

The Commissioner argues that "the vocational expert also identified several other jobs Plaintiff could perform with her RFC, including reduced numbers of the injection molding machine

---

[2] The Commissioner's reference to Morgan v. Barnhart, 142 Fed. App'x 716 (4th Cir. 2005), is likewise unavailing. (See Comm'r Supplemental Br. (Doc. 23) at 3.) In Morgan, like in Ngarurih, the context in which the court applied the harmless-error rule is distinguishable from the facts of this case. The Morgan plaintiff complained that the ALJ failed to give due weight to her treating physician's testimony that "it would be hard [for Morgan] to sit or stand for a 5 hour day." Id. at 722. The court found, however, that the evidence on which the ALJ did rely – the "functional capacity exam" designed to test the plaintiff's physical limitations (see id. at 719) – was consistent with the physician's opinion, so the ALJ's reliance on one over the other had no bearing on the outcome of the case.

Here, however, even the Commissioner "acknowledges that the ALJ erred by concluding that Plaintiff could perform the 'sedentary' jobs identified by the vocational expert." (Comm'r Mem. in Supp. of Mot. for J. on the Pleadings (Doc. 15) at 4.) This is not a case, therefore, where two pieces of evidence lead to the same conclusion and the plaintiff objects that the ALJ used the wrong one. Instead, this is a case where both parties agree that the VE testimony cited by the ALJ cannot support the ALJ's conclusion, and thus is quite distinguishable from Morgan.

tender, inspector and hand packager of plastic products . . ." (Id. at 5.) This court is not able to determine that the testimony in the record supports such a finding without some clarification. Specifically, in response to the sit/stand hypothetical, the VE testified: "That would significantly erode these numbers, Your Honor. However, the jobs at the light level of physical demand I have observed and do know that the work stations are at, in some of the jobs approximately 25% of those numbers would continue to be available to a person that required an opportunity to sit or stand at their discretion on a minimum alternating of . . . 30 minutes." (Tr. 92.) The VE's response is qualified by jobs "I have observed" and "some of the jobs." The VE's qualification fails to specify whether the jobs "observed" and "some of the jobs" are the same ones previously identified by the VE (Tr. 89-90) in the light level category. This court agrees that a factor of 25%, when applied to the representative jobs identified (Injection Molding Machine Tender, 2,000 jobs in North Carolina; Inspector and Hand Packager of Plastics Products, 2,000 jobs in North Carolina; Poly Packer Heat Sealer, 1,500 jobs in North Carolina) could result in a sufficient number of jobs within the region to support the ALJ's finding. (Id.; see also Recommendation (Doc. 16) at 11

(collecting cases).) However, even assuming that this analysis would not be precluded by the Chenery doctrine, it is not clear that those representative jobs are the same jobs the VE has "observed" or are "some of the jobs" the VE was referring to in the testimony.

This court is therefore not able to determine whether "25% of those numbers" relates to "Injection Molding Machine Tender" (Tr. at 89), Inspector and Hand Packager of Plastic Products (Tr. 90), Assembler of Plastic Hospital Products (id.), or Poly Packer Heat Sealer (id.). It is also not clear from the transcript whether these are the only light physical demand jobs the VE has observed, since the VE's response fails to equate the jobs the VE has observed (Tr. at 92) with the jobs described (Tr. at 89-90.) This failure to clarify whether the jobs the VE observed in the light physical category are the same ones described as the "25% of those numbers . . . continu[ing] to be available to a person" requiring the sit/stand option (Tr. at 92) leaves this court to speculate as to the numbers of jobs available in the positions the VE was describing.

The ALJ is in a more appropriate position to evaluate the substance and credibility of the VE's testimony, and to make the

determination that non-sedentary jobs exist in sufficient numbers to support her finding of non-disability.

IV. **CONCLUSION**

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Recommendation (Doc. 16) is **ADOPTED IN PART** in accordance with the foregoing analysis. **IT IS FURTHER ORDERED** that the case be **REMANDED** to the Commissioner to clarify the ALJ's conclusions of law and findings of fact regarding the types and numbers of jobs available to Plaintiff given her age, education, work experience, and RFC.

This the 25th day of March, 2014.

_____
United States District Judge